IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARLEY M. BRADY, # R13122, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23-cv-00295-SMY |
| ) | |
| ILLINOIS DEPT. of CORRECTIONS, ) | |
| DANIEL MONTI (Warden, Centralia CC, ) | |
|     Official Capacity Only), ) | |
| LANA NALEWAJKA, ) | |
| PAM WARD (Nurse, Lawrence CC), ) | |
| RICK HUBLER (C/O Centralia CC), ) | |
| CLAY WHEELAN (Bureau of Identification ) | |
|     Officer, Centralia CC), and ) | |
| SEAN BALLANTINI (Bureau of ) | |
|     Identification Officer, Centralia CC), ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on two motions for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies before filing suit: a motion filed by Defendants Nalewajka, Monti,[1] and the Illinois Department of Corrections ("IDOC") (Doc. 28),[2] which Plaintiff opposes (Doc. 37); and a motion filed by Defendants Ballantini, Hubler, and Wheelan (Doc. 61), which Plaintiff also opposes (Doc. 70). Ballantini, Hubler, and Wheelan replied to Plaintiff's opposition (Doc. 71). For the following reasons, the motions will be DENIED in PART.[3]

---

[1] Defendant Warden Monti remains in the action in his official capacity only, for the sole purpose of implementing any injunctive relief that may be ordered. (Doc. 13, pp. 9-10; Doc. 46, p. 4, n.1).
[2] Former Defendant Warden DeeDee Brookhart also joined in the motion, but she has since been dismissed from the action. (Doc. 46).
[3] The remaining issues not resolved in this order, as outlined below, will be referred to a magistrate judge for an evidentiary hearing.

1

## BACKGROUND

Plaintiff filed this this *pro se* civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights during his incarceration at Lawrence Correctional Center and subsequently at Centralia Correctional Center, where he is still confined. He makes the following allegations relevant to the pending motions in the Amended Complaint (Doc. 47): Plaintiff is hearing impaired. His medically necessary hearing aids were rendered inoperable at Lawrence because Defendant Ward failed to provide replacement batteries. Plaintiff is also visually impaired and uses a large face ADA watch to set alarms for scheduled events. When Plaintiff was transferred to Centralia on July 28, 2021, his hearing aids, ADA watch, and tactile pager watch were confiscated, causing him to miss meals and other events because he was unable to hear the announcements. Plaintiff's hearing aids and ADA watch were returned on August 20, 2021. However, he still had not received a tactile pager watch as of December 2022, when he submitted his initial Complaint.

Centralia Bureau of Identification officers issued Plaintiff his new ID card but failed to include the "hearing impaired" designation that was on Plaintiff's ID at Lawrence. They explained that only the facility ADA Coordinator could approve this label. Plaintiff needed that safety designation to prove his status so he could attend "make up chow" when he missed hearing the meal calls. ADA Coordinator Nalewajka ordered the Bureau of Identification on August 20, 2021 to replace Plaintiff's "hearing impaired" ID card designation, but this was not done until December 29, 2021.

Following threshold review, Plaintiff is proceeding on the following claims (Doc. 13; Doc. 46, pp. 4-5):

Count 1:   Eighth Amendment deliberate indifference to serious medical needs

|  |  |
|---|---|
|  | claim against Pam Ward (Lawrence Nurse) for failing to run the hearing aid battery call line on July 24, 2021, depriving Plaintiff of his ability to use his medically necessary hearing aids. |
| Count 2: | Eighth Amendment deliberate indifference to serious medical needs claim against Rick Hubler (Centralia Property Officer) and Lana Nalewajka for seizing Plaintiff's medically necessary hearing aids and ADA watch and failing to issue him a tactile pager watch, depriving Plaintiff of these items and limiting his major life activities. |
| Count 5: | ADA and/or RA claim against the Illinois Department of Corrections for depriving Plaintiff of his hearing aid batteries, hearing aids, ADA watch, and tactile pager watch necessary to accommodate Plaintiff's hearing loss, limiting his major life activities, and for failing to take steps to prevent future deprivations. |
| Count 6: | Illinois state law medical negligence claim against Pam Ward and Lana Nalewajka for breaching their duty of care to Plaintiff when they deprived him of functioning hearing aids, his ADA watch, and a tactile pager watch. |
| Count 7: | Illinois state law negligence claim against Pam Ward, Rick Hubler, Clay Wheelan and Sean Ballantini (Bureau of Identification Officers), and Lana Nalewajka for breaching their duty of care to Plaintiff, causing him injury. |

## **DISCUSSION**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey*

3

*v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *See* also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.*

If an inmate is unsatisfied with the outcome at the facility, he must appeal to the Administrative Review Board ("ARB") within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures further allow for an inmate to file an emergency grievance; to do so, the

inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a).  After such a determination, processing of the grievance is expedited, as is any appeal.  20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

An inmate is required to exhaust only those administrative remedies that are available to him. See, *Ross v. Blake*, 578 U.S. 632, 642 (2016).  Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting.  *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

Defendants identify one grievance filed by Plaintiff relevant his claims, No. E-21-8-19. Plaintiff disputes that this is the only grievance and contends that he filed a later grievance on September 16, 2021, to which he never received any response, rendering the grievance procedure unavailable as to the issues raised therein.

**Grievance No. E-21-8-19, dated August 2, 2021**

In this grievance, Plaintiff complained that when he arrived at Centralia on July 29, 2021, his hearing aids and ADA watch that he had packed at Lawrence for transfer had been removed from his property and were not returned to him (Doc. 28-1, p. 45; Doc. 61-1, p. 45).  A Centralia property officer informed Plaintiff that his hearing aids and watch were sent to the facility's ADA Coordinator (Doc. 28-1, p. 46; Doc. 61-1, p. 46).  Plaintiff asked correctional officers to call the ADA Coordinator about the matter but was told it would take time due to the influx of transfers.

The grievance was received on August 4, 2021, and deemed an emergency (Doc. 28-1, pp. 43, 45; Doc. 61-1, pp. 43, 45).  It was forwarded to the HCUA (Health Care Unit Administrator), who responded that the "hearing aids or watch were sent to the ADA Coordinator (HCUA)."  (Doc.

5

28-1, p. 43; Doc. 61-1, p. 43).  Defendants' exhibit of the grievance includes a sticky note on which is written: "Wait on Lana; ~~sent 8/9/21 to Lana~~ [crossed out]; Lana found hearing aids, watch & necklace [illegible]; chain is … held for approval."  (Doc. 28-1, p. 45; Doc. 61-1, p. 45).

On August 23, 2021, the hearing aids and ADA watch were found and returned to Plaintiff.[4]  (Doc. 28-1, p. 43; Doc. 61-1, p. 43).  The grievance was "partially upheld."  *Id.*  Plaintiff timely appealed the grievance to the ARB, which deemed it moot because the hearing aids and ADA watch had been returned and Plaintiff's cross necklace was under review (Doc. 28-1, p. 42; Doc. 61-1, p. 42).

### Plaintiff's Alleged Second Grievance Dated September 16, 2021

Plaintiff includes a copy of his personal grievance log and a draft of the grievance he claims to have submitted on September 16, 2021 (Doc. 37, pp. 12-14).  This draft describes the following sequence of events: Plaintiff's hearing aid batteries died at some time prior to the weekend of July 24-25, 2021, when Lawrence did not run a battery replacement line (Doc. 37, p. 13).  On July 26, 2021, Plaintiff packed his non-functional hearing aids and ADA watch for transfer to Centralia.  On July 29, 2021, at the Centralia Bureau of Identification, Plaintiff received his property minus the hearing aids and ADA watch.  He was "told by property" that these items were sent to the ADA Coordinator.  *Id.*

After filing the August 2, 2021, Grievance No. E-21-8-19, Plaintiff was called to meet with Lana Nalewajka ("Mrs. Lana"), the Facility ADA Coordinator and HCUA.  At that time (August 20, 2021), they completed his Communication Plan, the tactile watch was ordered, and the "Hard of Hearing" designation was to be replaced on Plaintiff's ID card (Doc. 37, p. 14).  Mrs. Lana told Plaintiff his hearing aids and ADA watch could not be located.  *Id.*  An hour and a half later,

---

[4] In the same grievance, Plaintiff sought the return of a cross necklace; that item was forwarded to the Chaplain for review/approval before it could be returned (Doc. 28-1, p. 43; Doc. 61-1, p. 43).

Plaintiff was called to the Health Care Unit where Mrs. Lana had found the hearing aids and ADA watch, and those two items were returned to him.

As of the September 16, 2021, Plaintiff still had not received the tactile watch and his ID card had not been updated to reflect he is hard of hearing (Doc. 37, p. 13). Plaintiff sought financial compensation for the 23 days he went without his hearing aids and offered to waive the additional claim for failure to provide the tactile watch or the updated ID card for 27 days if his terms were met. (Doc. 37, p. 13). Plaintiff's personal log entry describes this grievance as a "medical demand letter" and states it yielded no response (Doc. 37, p. 12).

**Defendants Nalewajka and IDOC'S Motion for Summary Judgment (Doc. 28)**

Nalewajka claims that Grievance No. E-21-8-19 did not exhaust Plaintiff's claims against her because Plaintiff "only vaguely mentioned an 'ADA Coordinator'" which did not sufficiently identify her and did not allege any claim or complaint against the ADA Coordinator. Nalewajka also argues that Plaintiff's claim based on the tactile pager watch must be dismissed because he did not mention that item in Grievance No. E-21-8-19. Defendant IDOC asserts that Plaintiff failed to exhaust his administrative remedies against it because his grievance did not name IDOC, did not allege any ADA or RA violation, and did not identify any IDOC policy/practice he challenges (Doc. 28, pp. 7-8, 10-12).

Plaintiff disputes that he only filed the single Grievance No. E-21-8-19, and argues this grievance sufficiently identified Nalewajka and invoked the ADA. He asserts that because he never got a response to the grievance he filed on September 16, 2021, the process was unavailable to him as to the issues raised in that grievance.

Nalewajka's Answer admits that she was the ADA Coordinator and Healthcare Unit

7

Administrator at Centralia in July of 2021[5] (Doc. 25, p. 4). Her exhibits demonstrate that she, as the ADA Coordinator/HCUA, provided a response to Plaintiff's Grievance No. E-21-8-19. Moreover, Plaintiff's reference in the grievance to Nalewajka by her title of ADA Coordinator is sufficient to identify her. This identification is supported by the sticky note pasted on the grievance naming "Lana" and by the official report on Grievance No. E-21-8-19, incorporating the HCUA's written response that the "hearing aids or watch were sent to the ADA Coordinator (HCUA)" (Doc. 28-1, p. 43). See, *Maddox v. Love,* 655 F.3d 709, 721-22 (7th Cir. 2011) (prisoner's grievance did not identify the defendants, but prison administrators knew who was responsible and addressed grievance on its merits, thus "the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense").

Plaintiff's grievance included sufficient information for Centralia officials to address its merits. The grievance was ruled as "partially upheld" because the hearing aids and ADA watch were found and returned, and the cross necklace was under review. The ARB ruled the grievance moot for the same reasons. As such, Plaintiff's Grievance No. E-21-8-19 served its function – prison administrators knew who should address the matter, knew what to investigate, and the grievance was resolved on its merits. Plaintiff's technical error in failing to include Nalewajka's name in the grievance does not matter in this instance.

Plaintiff properly exhausted his claims against Nalewajka in Counts 2, 6, and 7 as to the hearing aids and ADA watch. Therefore, Nalewajka's motion for summary judgment will be denied as to these issues. However, because Plaintiff did not mention the tactile pager watch in Grievance No. E-21-8-19, an evidentiary hearing will be required to determine whether he filed the September 16, 2021 grievance, what it contained, and whether the grievance process was

---

[5] Nalewajka's Answer also notes she was on leave in or around July 2021 (Doc. 25, p. 4).

unavailable to him with regard to that purported grievance.

IDOC argues that because Plaintiff's Grievance No. E-21-8-19 failed to name the IDOC, did not mention any improper IDOC policies or practices, failed to draw any connection between IDOC and the loss of his hearing aids and ADA watch, and only concerned a discrete incident, he failed to exhaust his ADA/RA claim in Count 5 against IDOC.  In response, Plaintiff asserts that he checked the "ADA Disability Accommodation" box provided on the grievance form to describe the nature of the grievance, and stated in the body of the grievance that his ADA accommodations were taken.

Plaintiff's notation that the grievance concerned an "ADA Disability Accommodation," his description of the failure to provide him with working hearing aid batteries at Lawrence, and of the serious and ongoing deprivation at Centralia of his hearing aids and ADA watch, were sufficient to put IDOC officials on notice of the alleged ADA violations.  See, *Cortez v. Wexford Health Source, Inc.*, No. 19-cv-1238-SMY-MAB, 2022 WL 802282, at *2, 7 (S.D. Ill. Feb. 23, 2022), *report and recommendation adopted,* 2022 WL 797546 (S.D. Ill. Mar. 16, 2022).  And Plaintiff's allegation that he packed his ADA items with his property at Lawrence to prepare for a transfer and found those items missing and unavailable to him upon his arrival at Centralia, suggests flaws in IDOC's practices and procedures for transferring ADA-eligible inmates who are moved from one prison to another.  As such, Grievance No. E-21-8-19 provided sufficient notice to prison officials of the general substance of Plaintiff's potential claims and gave them an opportunity to investigate and remedy these issues without resorting to federal litigation.  Therefore, the grievance sufficiently exhausted the ADA/RA claim in Count 5 against the IDOC as to the hearing aid batteries, hearing aids, and ADA watch.  However, as previously noted, because Grievance No. E-21-8-19 did not mention the tactile pager watch, an evidentiary hearing

9

will be necessary to resolve whether Plaintiff exhausted that portion of Count 5.

**Defendants Hubler, Ballantini, and Wheelan's Motion for Summary Judgment (Doc. 61)**

Hubler argues that Plaintiff's grievance did not sufficiently identify him or his involvement in the events underlying his claims, because Plaintiff only "vaguely mentioned a[] 'property [officer]'" (Doc. 61, p. 9). Plaintiff responds that the property officer's actions were taken outside his presence, and when he later received a property slip, the signature on it was indecipherable. He also contends the grievance clearly described the problem; his hearing aids were removed from his property and sent to the ADA coordinator, and the date he discovered the issue.

The grievance officer's response notes the grievance was "forwarded to the HCUA & Personal Property for response" (Doc. 61-1, p. 43). The HCUA responded that Property Officer Quinn will "speak to the 3-11 Property Officer" regarding the missing items. *Id.* The grievance officer ultimately answered Grievance No. E-21-8-19 without raising any issue over the identification of the property officer who removed Plaintiff's items from his property.

Plaintiff adequately explains why he was unable to identify Hubler by name in Grievance No. E-21-8-19 as the property officer who informed him that his hearing aids and ADA watch had been confiscated. And as explained above with reference to Defendant Nalewajka, the omission of Hubler's name did not hinder Centralia officials from responding to the grievance on its merits. In this instance, Grievance No. E-21-8-19 served its function of identifying the problem and the responsible parties so that the matter could be investigated and addressed. Accordingly, Hubler's motion will be denied in part as to the claims in Counts 2 and 7 regarding the hearing aids and ADA watch. To the extent that Hubler may have been involved in the failure to issue Plaintiff a tactile pager watch, that matter will be addressed in a future evidentiary hearing regarding Plaintiff's purported grievance of September 16, 2021.

Ballantini and Wheelan correctly note that Plaintiff did not name them or mention the omission of the "hearing impaired" designation on his new ID card in Grievance No. E-21-8-19. Plaintiff explains that at the time he wrote that grievance, he was trying to get his hearing aids back quickly and the ID card problem "was not yet clear" (Doc. 70, p. 8). He asserts that when he wrote the alleged missing September 16, 2021 grievance, he had become aware of the problems caused by the Bureau of Identification officers' removal of the hearing impairment designation, but was unable to identify the individual officers because they had no readable nametags. He further asserts that he immediately informed the officers of the ID card omission, and they responded that the ADA chief must order them to add that label. Plaintiff later learned that Wheelan and Ballantini operated the Bureau of Identification department at the time he arrived at Centralia and received the ID card without the "hearing impaired" label. The draft Plaintiff submitted of his September 16, 2021 grievance mentions his encounter with the Bureau of Identification officers and includes his request to have the "hard of hearing" designation replaced on his ID card as was ordered on August 20, 2021.

The PLRA's exhaustion requirements apply only to claims brought under *federal law* – not to a pure state law claim such as Count 7's negligence claim at issue here. 42 U.S.C. § 1997e(a); see also, *McDaniel v. Meisner*, 617 F. App'x 553, 556 n.3 (7th Cir. 2015). As such, Whelan and Ballantini are not entitled to summary judgment for failure to exhaust with respect to Count 7.

Whelan and Ballantini also argue they are entitled to dismissal of the state law claim in Count 7 because the Court lacks subject matter jurisdiction over them. They are correct that they are not included as defendants in any of the remaining federal claims. However, Plaintiff's claims against in Count 7 are related and form part of the same case/controversy as Plaintiff's federal claims. Thus, the Court may properly exercise supplemental jurisdiction over the negligence claim

against them, and their motion will be denied in its entirety. See, *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607-09 (7th Cir. 2008).

## DISPOSITION

The Motion for Summary Judgment filed by Defendants Nalewajka, Monti, and the IDOC (Doc. 28) is **DENIED** in part as to the claims against Nalewajka related to Plaintiff's hearing aids and ADA watch in Counts 2, 6, and 7, and is **DENIED** in part as to the ADA/RA claims against the IDOC in Count 5 related to Plaintiff's hearing aid batteries, hearing aids, and ADA watch.

The Motion for Summary Judgment filed by Defendants Hubler, Ballantini, and Wheelan (Doc. 61) is **DENIED** in part as to the claims against Hubler related to Plaintiff's hearing aids and ADA watch in Counts 2 and 7, and is **DENIED** as to the claim in Count 7 against Wheelan and Ballantini.

The Court **RESERVES RULING** on the claims related to the tactile pager watch in Count 2 against Nalewajka and Hubler, in Count 5 against the IDOC, in Count 6 against Nalewajka, and in Count 7 against Nalewajka and Hubler, pending an evidentiary hearing. The Court will refer these remaining exhaustion issues to a magistrate judge for an evidentiary hearing regarding Plaintiff's assertion that he filed a grievance on September 16, 2021 including the tactile pager watch issue.

**IT IS SO ORDERED.**

**DATED: September 23, 2024**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**